UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEPHEN AND KATHY DARNEY, Personally and on behalf of K.D. and S.D., </br></br>Plaintiffs, </br></br>v. </br></br>DRAGON PRODUCTS COMPANY, LLC, </br></br>Defendant. | ) ) ) ) ) ) ) Docket No. 08-cv-47-P-S ) ) ) ) ) ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Stephen and Kathy Darney, personally and on behalf of their children K.D. and S.D. (collectively, "the Darneys"), assert claims for common-law trespass, statutory trespass, nuisance, negligence, and injunctive relief, arising out of the operation of a cement-manufacturing plant near their home. Before the Court is Defendant's Motion for Summary Judgment (Docket # 35), in which Defendant Dragon Products Company, LLC ("Dragon") asserts that Plaintiffs' claims are barred, in whole or in part, by the doctrines of claim preclusion or issue preclusion. As explained herein, the Court DENIES Defendant's Motion for Summary Judgment (Docket # 35).

**I.     SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved

favorably to the nonmovant. By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. See Santoni, 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## II.   FACTUAL BACKGROUND

Dragon operates a cement-manufacturing plant in Thomaston, Maine, where it has quarried limestone on-site since 1928. The Darneys purchased a nearby residence in March 2002. Thereafter, they allegedly began to suffer personal injury and property damage resulting from Dragon's operation of the plant.

On November 12, 2004, the Darneys filed a complaint against Dragon in Knox County Superior Court ("Darney I").[1] They asserted claims for common-law trespass, statutory trespass, nuisance, strict liability, negligence, and injunctive relief. (See Compl. (Docket # 38-3) ¶¶ 21-45.) The parties proceeded to litigate this suit in state court, conducting extensive discovery, designating expert witnesses, and filing pre-trial motions.

On November 17, 2005, Dragon filed a Motion for Partial Summary Judgment as to the Darney I claims for nuisance, strict liability, and negligence for personal injury. On October 26, 2007, after the Darneys filed and supplemented their opposition to Dragon's motion, and filed additional motions to continue consideration, the Knox County Superior Court granted Dragon summary judgment as to the aforementioned claims. The court placed what remained of the Darney I suit on its March 2008 trial list soon thereafter.

On January 30, 2008, the Darneys filed the instant action in Knox County Superior Court ("Darney II") and moved to consolidate the two lawsuits. In response, Dragon removed the Darney II suit to this Court on February 13, 2008. The Darneys initially moved to remand the Darney II suit to state court, but ultimately withdrew that motion after the state court signaled its unwillingness to consolidate. Thus, Darney II remained in this Court, while Darney I proceeded toward trial in Knox County Superior Court.

On May 27, 2008, the parties filed in Knox County Superior Court a joint stipulation of dismissal, with prejudice, of Darney I. Unfortunately, this stipulation

---

[1] Plaintiffs initially sued Dragon Products Company, Inc., but ultimately amended their Darney I complaint to specify that the proper defendant was Dragon Products Company, LLC. (See Def.'s Statement of Material Facts (Docket # 36) ¶¶ 6-8.)

3

makes no mention of the pending Darney II lawsuit. On June 18, 2008, Dragon moved to amend its Darney II answer to assert res judicata defenses; the Darneys consented provisionally, maintaining that these new affirmative defenses were meritless.

Dragon now moves for summary judgment, asserting that the parties' dismissal with prejudice of Darney I bars further litigation of Darney II in this Court, pursuant to the doctrine of claim preclusion. In response, Plaintiffs contend that the Darney II complaint alleges only new, post-November 12, 2004 claims that were not previously adjudicated and are not barred by the doctrine of claim preclusion. Alternatively, Dragon maintains that the state court's entry of partial summary judgment warrants dismissal of Plaintiffs' nuisance and personal injury claims, pursuant to the doctrine of issue preclusion.[2]

### III. DISCUSSION

#### A. Claim Preclusion

The doctrine of claim preclusion prevents relitigation of claims or causes of action previously decided. State law determines the claim-preclusive effect in federal court of the parties' dismissal of Darney I. See Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008). Pursuant to Maine law, claim preclusion bars a subsequent lawsuit if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action. See Portland Water Dist. v. Town of Standish, 940 A.2d 1097, 1099-1100 (Me. 2008) (citation and internal punctuation

---

[2] The Supreme Court recently observed that the terms claim preclusion and issue preclusion "have replaced a more confusing lexicon. Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" Taylor v. Sturgell, --- U.S. ----, 128 S.Ct. 2161, 2171 n.5 (2008). Accordingly, the Court will employ only these terms in its analysis.

omitted). The parties agree that the first two criteria are satisfied here.[3] They disagree as to the third criterion: whether the causes of action in the two lawsuits are sufficiently identical.

Maine courts apply a transactional test to determine the identity of multiple causes of action. See Thibeault v. Brackett, 938 A.2d 27, 30 (Me. 2007). Specifically, courts examine "the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if [the causes of action] were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." Portland Water Dist., 940 A.2d at 1100 (citation and internal punctuation omitted). They also consider whether the operative facts "are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Beegan v. Schmidt, 451 A.2d 642, 645 (Me. 1982) (quoting Restatement (Second) of Judgments § 24(2)).

Of course, courts have long abided the "unremarkable principle" that "[c]laims arising subsequent to a prior action . . . are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same 'course of conduct.'" Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 383 (2d Cir. 2003); see also Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 328 (1955) (earlier judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."). This principle has proven particularly apposite in cases involving continuing torts, where each successive injury

---

[3] In particular, a voluntary dismissal with prejudice constitutes a valid final judgment for purposes of claim preclusion. See United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998).

generates an independent cause of action. See Restatement (Second) of Judgments § 26(1)(e) (res judicata does not apply "in a case involving a continuing or recurrent wrong, [and] the plaintiff is given an option to sue . . . from time to time for the damages incurred to the date of suit"); Restatement (Second) of Torts § 161, cmt. b; Restatement (Second) of Torts § 930, cmt. a; Murray v. Bath Iron Works Corp., 867 F. Supp. 33, 48 (D. Me. 1994) (recognizing availability of successive causes of action for continuing trespass and nuisance under Maine law). As the Supreme Court instructed long ago: "That both suits involved 'essentially the same course of wrongful conduct' is not decisive. Such a course of conduct—for example, an abatable nuisance—may frequently give rise to more than a single cause of action." Lawlor, 349 U.S. at 327-28.[4]

The critical question, then, is whether Plaintiffs' Darney II claims arose subsequent to Darney I. Dragon adduces the following evidence in support of claim preclusion: (1) factual and legal overlap between the two lawsuits; (2) Plaintiffs' view of Darney I as encompassing post-November 2004 claims; and (3) Plaintiffs'

---

[4] Despite this established principle, Dragon relies largely on inapposite authority in support of claim preclusion. The instant action differs from those cases in which the first judgment conclusively established the legality of the complained-of conduct. See, e.g., Harmon v. Adams, No. 14-01-27, 2002 WL 987914, *3 (Ohio. Ct. App. May 1, 2002); Barth v. Town of Sanford, No. 01-208-P-C, 2001 WL 1356157, at *4 (D. Me. Nov. 5, 2001) ("The plaintiff's argument would allow a plaintiff to bring successive claims of nuisance after repeated holdings by the courts that the activities at issue did not constitute a nuisance, merely because the activities continued unchanged after each such finding. . . . Activity that has been found, per entry of a judgment, not to constitute a nuisance as a matter of law cannot become a nuisance merely by virtue of the passage of time after such a determination has been made."); Rose v. Town of Harwich, 778 F.2d 77, 82 (1st Cir. 1985) ("Rose is not suing in federal court to recover damages that have accumulated since his suit in state court; rather, he is seeking a second chance to establish the illegality of events that occurred more than fifteen years ago."). Here, the parties' dismissal with prejudice of Darney I, which was wholly unaccompanied by factual findings, did not determine the legality of Dragon's ongoing conduct. See Lawlor, 349 U.S. at 327. To the extent Barth suggests otherwise, the Court declines to follow it. See Barth, 2001 WL 1356157, at *4 (equating procedural default in state court "with a determination that the claims actually lacked substantive merit"). In addition, other cases in which claim preclusion was found to bar a subsequent lawsuit that alleged ongoing conduct did not concern causes of action that arise with each successive injury. See, e.g., Havercombe v. Dep't of Educ. of the Commonwealth of Puerto Rico, 250 F.3d 1 (1st Cir. 2001) (employment discrimination claims under the ADEA, Title VII, and 42 U.S.C. § 1981); Waldman v. Vill. of Kiryas Joel, 207 F.3d 105 (2d Cir. 2000) (religious discrimination claims under 42 U.S.C. § 1983).

6

characterization of their <u>Darney II</u> claims as "the same or substantially the same" as the <u>Darney I</u> claims. In response, Plaintiffs maintain that <u>Darney II</u> alleges only post-November 12, 2004 claims that were not previously adjudicated.

### 1. Similarity Between the Suits

Dragon asserts that Plaintiffs complained of the same continuing harms, and sought redress for the same injuries, in <u>Darney I</u> and <u>Darney II</u>. Specifically, it identifies numerous similarities between the two suits, including the Darneys' factual allegations regarding constant noise, disruptive blast vibrations, pervasive dust deposits, and noxious odors;[5] the nature of the personal injuries suffered by Ms. Darney and the minor children, and the property damage to the home; and the relief requested. In short, Dragon contends that its ongoing course of conduct between roughly 2002 and 2008 constitutes the factual nucleus in both lawsuits.

But Dragon ignores Plaintiffs' broader effort to restrict their <u>Darney II</u> complaint to claims that arose since November 12, 2004. (<u>See</u> Compl. (Docket # 38-9) ¶¶ 10-13, 17-18, 20, 22-28, 33, 35, 43.) The <u>Darney II</u> complaint includes new factual allegations and new evidence, and omits reference to injuries suffered before November 12, 2004. (<u>See</u> <u>id</u>. ¶¶ 22-28, 33; Compl. (Docket # 38-3) ¶ 17.) Undeniably, the two complaints overlap. However, plaintiffs who bring subsequent suits for successive instances of trespass or nuisance must frequently plead similar facts, as the alleged harm continues unabated from one period to the next. Thus, facial similarity between the two suits proves little; to the extent Plaintiffs limited <u>Darney II</u> to new causes of action that arose

---

[5] The Court observes that many of the factual similarities cited by Dragon appear in Plaintiffs' answer to interrogatories, not the Complaints themselves.

7

after November 12, 2004, they pleaded the type of subsequent claim contemplated by the Restatement and Lawler.

### 2. Plaintiffs' View of Darney I

Next, Dragon contends that the Darneys "viewed their 2004 lawsuit as encompassing more than just Dragon's conduct prior to the filing of [that] complaint." (Mot. for Summ. J. (Docket # 35) at 15.) It observes that the Darneys asserted claims for "continuous" harms; conducted discovery regarding post-November 2004 conduct, and intended to introduce this evidence at trial; and sought injunctive relief. In essence, Dragon asserts that Plaintiffs sought redress for all past and prospective damages in Darney I.

The Darney I complaint belies this assertion. First, although Plaintiffs described the alleged harm as "continuing," they requested relief for the "actual damages caused" by Dragon's activities, not "continuing" or "prospective" damages. (Compl. (Docket # 38-3) ¶¶ 25, 29.) See Restatement (Second) of Torts § 930; cf. Peacock v. Sundre Twp., 372 N.W.2d 877, 879 (N.D. 1985) (finding that plaintiff elected to seek a single recovery for all past and future damage when pleadings sought "actual and continuing damages"). Moreover, Plaintiffs' request for injunctive relief does not automatically sweep all post-November 2004 conduct within the ambit of Darney I; indeed, multiple claims do not "congeal into a single cause of action merely because equitable relief is also sought." Lawlor, 349 U.S. at 329.

Admittedly, Plaintiffs were permitted to conduct discovery regarding post-November 2004 conduct in Darney I. But the scope of discovery alone will not convert Darney I into a suit for all past and prospective damages. In sum, Dragon's arguments do

8

not overcome the default presumption that a tort plaintiff typically seeks "to recover for harm flowing from [] past invasions," especially where, as here, the Darneys explicitly limited their requested relief in Darney I to actual damages. Restatement (Second) of Torts § 930, cmt. a.

### 3. Plaintiffs' View of Darney II

Finally, Dragon points to Plaintiffs' characterization of their Darney II claims as "the same or substantially the same as the 2004 claims" in their motion to consolidate the two suits in state court. (Mot. for Summ. J. (Docket # 35) at 3.) But Dragon makes too much of too little: in that same motion, Plaintiffs explicitly described their Darney II complaint as "setting forth . . . new claims against Dragon Products that have arisen since the filing of the pending [Darney I] complaint filed on November 12, 2004." (Mot. to Consolidate (Docket # 38-10) at 2.) Moreover, in opposing Plaintiffs' attempts to consolidate or to reopen discovery in Darney I, Dragon too maintained an inconsistent position regarding the identity of the causes of action.[6] In any event, the parties' tactical behavior regarding consolidation does not mandate any particular result regarding the separate issue of claim preclusion. See Diversified Foods, Inc. v. First Nat'l Bank of Boston, 985 F.2d 27, 31 (1st Cir. 1993) ("Courts could, we suppose, disallow the claim preclusion defense whenever two suits are brought and the defendant thereafter resists their consolidation. But when a plaintiff has chosen to bring two lawsuits in the same time frame relating to the same operative facts, it is hard to see why the defendant should not be able to resist consolidation on proper grounds, such as undue delay."); Imperial Constr. Mgmt. Corp. v. Laborers Int'l Union of N. Am. Local 96, 729 F. Supp. 1199,

---

[6] Specifically, Dragon asserted that any new evidence would have "relate[d] only to Plaintiffs' new claims asserted in their 2008 Complaint [Darney II] and not to any issue raised in the instant litigation." (Def.'s Opp'n to Mot. to Reopen Discovery (Docket # 44-12) at 3.)

9

1206 n.5 (N.D. Ill. 1990) (observing that "a plaintiff's efforts to consolidate the cases do not estop it from denying the application of res judicata.").

The Court concludes that Plaintiffs pleaded only pre-November 12, 2004 causes of action in Darney I and only post-November 12, 2004 causes of action in Darney II, which constitutes the type of subsequent claim contemplated by the Restatement and Lawler.[7] Thus, the parties' dismissal with prejudice of Darney I does not bar the instant action.

B.  Issue Preclusion

Dragon offers an alternative ground for dismissal: issue preclusion. That doctrine prevents relitigation of factual issues already decided "if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." Portland Water Dist., 940 A.2d at 1100 (citation omitted). In Darney I, the Knox County Superior Court determined (1) that Plaintiffs had failed to establish a reduction in the value of their property, and granted summary judgment as to their nuisance claim, and (2) that Plaintiffs had failed to establish requisite proof of causation, and granted summary judgment as to their negligence claim for personal injury.[8] (See Order (Docket # 38-8) at 4-5, 7-9.) Dragon

---

[7] Although Plaintiffs did not explicitly characterize their Darney II negligence claim as a "continuing tort," they have pleaded new injuries that arose after November 12, 2004. (See, e.g., Compl. (Docket # 38-9) ¶¶ 10-12, 33.) Because a cause of action accrues when a plaintiff suffers a judicially cognizable injury, Plaintiffs' Darney I and Darney II negligence claims are distinct for purposes of claim preclusion. See McLaughlin v. Superintending Sch. Comm. of Lincolnville, 832 A.2d 782, 788-89 (Me. 2003); Murray, 867 F. Supp. at 49.

[8] The state court also granted summary judgment as to a third Darney I claim for strict liability. Plaintiffs did not include this claim in their Darney II complaint. Thus, Dragon's issue-preclusion argument is limited to Plaintiffs' Darney II claims for nuisance and negligence for personal injury.

now maintains that the state court's partial summary judgment order warrants dismissal of Plaintiffs' Darney II nuisance and personal injury claims.

The Darneys do not respond to Dragon's issue-preclusion argument in their opposition to the instant motion for summary judgment. Nevertheless, the Court has an overriding obligation to first inquire "whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989). The Darneys' silence may not automatically operate as a waiver. See id.

In short, the issue-preclusive effect of the state court's partial summary judgment order, if any, does not warrant summary judgment. First, the Court questions whether the state court's order possesses sufficient finality for purposes of issue preclusion. See Tardiff v. Knox County, 567 F. Supp. 2d 201, 213-14 (D. Me. 2008); but see Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic Med., 304 F.3d 804, 808 (8th Cir. 2002). Furthermore, in rendering its order, the state court treated the underlying factual record as complete as of October 1, 2006. (See Order (Docket # 38-8) at 3.) But subsequent facts may permit Plaintiffs to establish proof of diminution in property value and/or causation relevant to their Darney II claims. Thus, the state court did not determine factual issues "identical" to those presented here. Portland Water Dist., 940 A.2d at 1100.

The Court concludes that the state court's partial summary judgment order does not preclude Plaintiffs from litigating the distinct factual issues underlying their Darney II claims. Thus, despite the Darneys' silence, summary judgment is not appropriate. See Fed. R. Civ. P. 56(e)(2). The better course is to permit pre-trial motions regarding specific evidentiary matters.

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant's Motion for Summary Judgment (Docket # 35) is hereby DENIED. Plaintiffs may proceed with their <u>Darney II</u> claims, all of which arose after November 12, 2004.

SO ORDERED.

/s/ George Z. Singal<br>
U.S. District Judge

Dated this 6th day of January, 2009.