**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| STEPHEN AND KATHY DARNEY, Personally and on behalf of K.D. and S.D., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Docket No. 08-cv-47-P-S |
| DRAGON PRODUCTS COMPANY, LLC, ) ) ) ) | |
| Defendant. ) ) | |

**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Stephen and Kathy Darney, personally and on behalf of their children K.D. and S.D. (collectively, "the Darneys"), assert claims for common-law trespass, statutory trespass, nuisance, negligence, and injunctive relief, arising out of the operation of a cement-manufacturing plant near their home. Before the Court is Defendant's Motion for Partial Summary Judgment (Docket # 62) as to Plaintiffs' claims for nuisance, personal injury, and trespass. As explained herein, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Partial Summary Judgment (Docket # 62). The Court also CERTIFIES two determinative and unsettled questions of state law, regarding the viability of claims for trespass based on intangible invasions by dust and vibrations, to the Maine Supreme Judicial Court sitting as the Law Court.

**I.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Santoni v. Potter, 369 F.3d 594, 598 (1st

Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. See Santoni, 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## II. FACTUAL BACKGROUND

Defendant Dragon Products Company, LLC ("Dragon") operates a cement-manufacturing plant in Thomaston, Maine, where it has quarried limestone on-site since 1928. The Darneys purchased a nearby residence in March 2002. Thereafter, they

allegedly began to suffer personal injuries and property damage resulting from Dragon's operations.

On November 12, 2004, the Darneys filed a complaint against Dragon in Knox County Superior Court ("Darney I"), in which they asserted claims for common-law trespass, statutory trespass, nuisance, strict liability, negligence, and injunctive relief. (See Compl. (Docket # 38-3) ¶¶ 21-45.) The parties proceeded to litigate this suit in state court, conducting extensive discovery, designating expert witnesses, and filing pre-trial motions. On October 26, 2007, the Knox County Superior Court granted Dragon summary judgment as to the Darney I claims for nuisance, strict liability, and negligence for personal injury. The court placed what remained of the Darney I suit on its March 2008 trial list soon thereafter.

On January 30, 2008, the Darneys filed this action ("Darney II") in Knox County Superior Court, in which they asserted claims for common-law trespass, statutory trespass, nuisance, negligence, and injunctive relief, and moved to consolidate the two lawsuits. In response, Dragon removed the Darney II suit to this Court. The Darneys initially moved to remand the Darney II suit to state court, but ultimately withdrew that motion after the state court signaled its unwillingness to consolidate. Thus, Darney II remained in this Court, while Darney I proceeded toward trial in state court.

On May 27, 2008, the parties filed in Knox County Superior Court a joint stipulation of dismissal, with prejudice, of Darney I. On January 6, 2009, this Court determined that neither the parties' dismissal of Darney I nor the state court's partial summary judgment order warranted preclusion of Darney II, and thus denied Dragon's Motion for Summary Judgment (Docket # 35). (See Order (Docket # 48).)

Dragon now renews its call for summary judgment, alleging that the Darneys are unable to prove essential elements of their claims for nuisance, personal injury, and trespass.

## III.   DISCUSSION

### A.   Nuisance Claim and Evidence of Diminution in Value

"The essence of a private nuisance is an interference with the use and enjoyment of land." Town of Stonington v. Galilean Gospel Temple, 722 A.2d 1269, 1272 (Me. 1999) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 87, at 619 (5th ed. 1984) ("Prosser and Keeton")).  In order to satisfy a common-law cause of action for private nuisance, a plaintiff must show an intentional, substantial, and unreasonable interference with her use and enjoyment of land.  See Charlton v. Town of Oxford, 774 A.2d 366, 377 (Me. 2001).  "The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct."  Id. (quoting Prosser and Keeton § 87, at 623).

Dragon asserts the Darneys are unable to satisfy the "substantial interference" element.  Specifically, it argues that the Darneys must demonstrate an overall reduction in the value of their property since the date of purchase.  Because the Darneys acknowledge that their home has appreciated since it was purchased—from $80,500 in 2002 to an estimated $160,000 in 2009[1]—Dragon maintains that summary judgment is warranted as to the nuisance claim.

In advancing this rather cramped reading of Maine law, Dragon misconstrues the fundamental question.  The "substantial interference" element focuses on the gravity of the harm, caused by the defendant's conduct, to a plaintiff's use and enjoyment of her

---

[1] (See Pls.' Resp. to Def.'s Statement of Material Facts (Docket # 75) ¶¶ 63, 65.)

4

land. A substantial harm is one of "importance, involving more than slight inconvenience or petty annoyance." Restatement (Second) of Torts § 821F, cmt. c; see also Charlton, 774 A.2d at 377 n.10 (observing that "[s]ubstantial simply means a significant harm to the plaintiff" and quoting Prosser and Keeton § 88, at 626); Prosser and Keeton § 88, at 628 (defining substantial and unreasonable interference as "definitely offensive, seriously annoying, or intolerable" and citing Restatement (Second) of Torts § 821F, cmt. d). In other words, although the "substantial interference" element serves "the need for a showing that the land is reduced in value," Charlton, 774 A.2d at 377, it requires more than a glancing comparison between purchase price and present value.[2]

Of course, overall depreciation in a property's estimated market value is one method of demonstrating a substantial interference. But surely there are several ways to skin a cat: for example, a plaintiff might prove substantial interference by offering evidence that the magnitude of the property's appreciation was less than it would have been but for the defendant's conduct. Moreover, a plaintiff might offer evidence of the costs of repairing the nuisance. See Mann v. Flacke, No. CV 00-024, 2001 WL 1736578, at *6 (Me. Super. Ct. July 16, 2001).[3]

Here, the Darneys offer evidence of appreciable damage to their chimney, ceiling, roof, wall, floors, windows, barn, and yard, as well as their repeated attempts to repair that damage. Moreover, they offer the testimony of contractor Richard Hunt, who

---

[2] Dragon relies on the following Charlton dictum: "Probably a good working rule would be that the annoyance cannot amount to unreasonable interference until it results in a depreciation in the market or rental value of the land." 774 A.2d at 377 n.10. However, this footnote text explicitly speaks to the unreasonableness of a defendant's interference, not its substantiality.

[3] See also 22 Am. Jur. 2d Damages § 256 ("The diminution in market value of a piece of real estate is often measured by the cost of repairing the injury to an interest therein, or the depreciation of market value may be indicated by the cost of repair.").

estimates that the cost of repair approaches $80,000.[4]  Dragon quarrels with Hunt's estimate, but its expert suggests that the cost of repair exceeds $18,000.[5]

In short, a reasonable jury could conclude that the interference with the Darneys' use and enjoyment of their property was substantial, despite the fact that the home has appreciated in value since the purchase date.  Thus, the Court denies Defendant's Motion for Partial Summary Judgment (Docket # 62) as to the Darneys' nuisance claim.[6]

### B.   Personal Injury Claims and Evidence of Causation

Among the damages for which Plaintiffs seek compensation are personal injuries suffered by Kathy Darney and the children.  Specifically, the Darneys attribute the following injuries to Dragon's operations: Kathy's headaches, eye problems, upper respiratory congestion, fainting and dizziness, rashes, sore throats; daughter K.D.'s ADHD, rashes, attention deficit, chronic coughing, eye problems, strep throat, and prospective fertility and respiratory problems; and son S.D.'s rashes, speech delays, behavioral problems, bronchitis, and prospective fertility issues.[7]  Dragon moves for summary judgment on the personal injury claims, asserting that the Darneys have failed to adduce sufficient record evidence from which a causal relationship between its conduct and their personal injuries could be established.

---

[4] Hunt's estimate relates to property damage from "the summer of 2004" to October 12, 2007.  (See Aff. of Richard Hunt (Docket # 44-26) ¶ 7.)  Of course, Plaintiffs pleaded only post-November 12, 2004 causes of action in Darney II; thus, the relevant evidence of harm is properly restricted to that period.  (See Order (Docket # 48) at 10.)

[5] (See Decl. of William L. Flanders, P.E. (Docket # 82) ¶ 9.)  Defendant's reliance on Charlton—in which the trial court rejected a real estate appraiser's testimony and concluded that the plaintiffs had "suffered no damages"—is thus unavailing.  774 A.2d at 378.

[6] In so ruling, the Court does not consider Plaintiffs' Correction to Opposition to Defendant's Motion for Partial Summary Judgment (Docket # 90) and related filings (Docket #s 91 & 92), which purport to supplement the record with additional evidence regarding valuation.

[7] (See Pls.' Resp. to Def.'s Statement of Material Facts (Docket # 75) ¶¶ 8-43.)

The parties' dispute concerns the issue of proximate cause, i.e., the existence of "some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." Walter v. Wal-Mart Stores, Inc., 748 A.2d 961, 968 (Me. 2000) (citation and internal punctuation omitted).  To avoid summary judgment, the Darneys "must show more than a mere possibility of proximate cause," Johnson v. Carleton, 765 A.2d 571, 575 (Me. 2001); Dragon's conduct must have been a "substantial factor" in causing the Darneys' personal injuries.  Walter, 748 A.2d at 968. Although the existence of proximate causation is typically a question of fact, Houde v. Millett, 787 A.2d 757, 759 (Me. 2001), the Darneys may not rest on pure speculation or conjecture.  See Merriam v. Wanger, 757 A.2d 778, 781 (Me. 2000).

The Darneys have produced a complete set of medical records for the period from November 2005 through their last discovery response; none of these records attribute any of their personal injuries to Dragon's conduct.  Furthermore, the Darneys have failed to identify any diagnoses from health care professionals attributing their injuries to Dragon's conduct.  Nor have the Darneys designated any experts to testify about the causal connection between their injuries and Dragon's dust.

The Darneys maintain that no expert medical testimony is necessary to establish proximate cause.  Instead, they intend to rely on their own testimony; the testimony of other community residents; an April 2008 DEP air monitoring report, which documents the presence of various pollutants on their property; Dragon's acknowledgement of the adverse health effects caused by exposure to cement dust; and citizen complaints about Dragon's operations.  The Darneys suggest that this evidentiary hodgepodge "will

7

demonstrate a pattern indicating that it is more likely than not that [their personal injuries] are caused by Dragon's dust, despite the absence of expert medical testimony."[8]

As the Knox County Superior Court explained in granting summary judgment as to the Darney I personal injury claims, the identification of a cause for serious medical conditions such as respiratory congestion, attention deficit, and speech delays—let alone prospective injuries that have not yet developed—is neither "a lay exercise" nor "a matter within common, non-expert understanding."[9] Rather, the causal relationship between Dragon's conduct and the Darneys' medical conditions draws on sophisticated science "beyond the ken of the average juror." Tolliver v. Dep't of Transp., 948 A.2d 1223, 1236 (Me. 2008). Accordingly, a jury may not "infer causation on complex medical facts without the aid of expert testimony." Merriam, 757 A.2d at 782.

Moreover, an assessment of proximate cause in this case would require the factfinder to consider the Darneys' health risk factors and to distinguish Dragon's operations from other potential causes of the Darneys' personal injuries. See Hoffman v. Vulcan Materials Co., 91 F. Supp. 2d 881, 889 (M.D.N.C. 1999). The record contains scant evidence from which a jury could properly make these judgments. Finally, the interrogatory answers on which the Darneys rely reveal little more than Dragon's acknowledgement of the potential consequences of exposure to various materials. This generic admission provides too thin a reed to generate a genuine issue of material fact as to whether Dragon's conduct was a "substantial factor" in causing the Darneys' personal injuries. Walter, 748 A.2d at 968; see also Hoffman, 91 F. Supp. 2d at 888-90 (granting

---

[8] (Pls.' Mem. in Opp'n to Def.'s Mot. for Partial Summ. J. (Docket # 74) at 10.)

[9] (Order (Docket # 38-8) at 8.) In other words, this is not a case where the purported injuries bear an "obvious causal relation to the actions of the [defendant.]" Hamor v. Maine Coast Memorial Hosp., 483 A.2d 718, 723 (Me. 1984); see also Tolliver, 948 A.2d at 1236 (citing Prosser and Keeton § 41, at 270).

defendant summary judgment as to plaintiffs' trespass claims, arising out of blasting operations, due to lack of expert testimony regarding causation).

To permit the Darneys' personal injury claims to proceed to trial would "stretch[] the jury's role beyond its capacity," Merriam, 757 A.2d at 782, and risk the substitution of sheer conjecture for proper fact-finding. See Tolliver, 948 A.2d at 1237. Thus, the Court grants Defendant's Motion for Partial Summary Judgment (Docket # 62) to the extent the Darneys seek recovery for their personal injuries.

### C. Trespass Claims

#### 1. Evidence of Intentionality

Under Maine law, common-law trespass and statutory trespass share a common element: the defendant's intentional entry onto another person's property. See Hayes v. Bushey, 196 A.2d 823, 824 (Me. 1964); 14 M.R.S.A. § 7551-B(1). "The minimum intent necessary for the tort of trespass is simply acting for the purpose of being on the land or knowing to a substantial certainty that one's act will result in physical presence on the land." Gibson v. Farm Family Mut. Ins. Co., 673 A.2d 1350, 1353 (Me. 1996) (quoting Jack H. Simmons et al., Maine Tort Law § 5.13, at 5-22 (2004) ("Maine Tort Law")); see also Prosser and Keeton § 13, at 73 ("The intent required . . . is simply an intent to be at the place on the land where the trespass allegedly occurred."). Of course, "a person may trespass without intending to trespass": intentional presence suffices. United States Fidelity and Guar. Co. v. Goodwin, 950 F. Supp. 24, 27 n.2 (D. Me. 1996); see also Hayes, 196 A.2d at 825 ("It is necessary to keep in mind the distinction between the intention to do a wrongful act or commit a trespass and the intention to do the act which results in or constitutes the intrusion.").

9

The filing of Darney I informed Dragon of the substantial likelihood that its conduct was resulting in physical presence on the Darneys' property. See Gibson, 673 A.2d at 1353. Since November 12, 2004, then, Dragon has knowingly operated with certainty sufficient to establish intent under Maine law.[10] Cf. Bradley v. Am. Smelting and Refining Co., 709 P.2d 782, 785 (Wash. 1985) (observing "that the defendant has been aware since 1905 that the wind, on occasion, caused these emissions to be blown over the plaintiffs' land" and concluding that defendant smelter had requisite intent to commit intentional trespass). Viewing the record in the light most favorable to the nonmoving party, the Court concludes that a genuine issue of material fact exists as to whether Dragon acted with "substantial certainty" that its conduct would result in presence on the Darneys' property.

Thus, the Court denies Defendant's Motion for Partial Summary Judgment (Docket # 62) as to the trespass claims on this ground.

### 2. Intangible Invasions by Dust and Vibrations

Dragon's alternative basis for dismissal of the trespass claims focuses on the historical distinction between the torts of trespass and nuisance. "[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it." Jacques v. Pioneer Plastics, Inc., 676 A.2d 504, 505 n.1 (Me. 1996) (quoting Prosser and Keeton § 87, at 622); see also Restatement (Second) of Torts § 821D, cmt. d; Norcross v. Thoms, 51 Me. 503, 503-04 (1863). Moreover, "traditionally, courts held that although a personal entry is

---

[10] See also Restatement (Second) of Torts § 8A, cmt. b ("If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."); id. § 158, cmt. i ("It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter.").

10

unnecessary for trespass to take place, a defendant's act must cause an invasion of the plaintiff's property by some tangible matter." John Larkin Inc. v. Marceau, 959 A.2d 551, 554 (Vt. 2008). Thus, under the traditional view, "the intrusion of smoke, gas, noise, or other invisible particles onto another's property is not actionable as a trespass, but only as a private nuisance." Id.

During the past half-century, however, some courts have adopted "a so-called 'modern' theory of trespass that permits actions based on the invasion of intangible airborne particulates. Under this modern theory, invasions of intangible matter are actionable in trespass only if they cause substantial damage to the plaintiff's property, sufficient to be considered an infringement on the plaintiff's right to exclusive possession of the property." Id. (citations and internal punctuation omitted).[11] Other courts and commentators have adhered to the traditional view.[12]

Dragon urges the Court to follow the traditional view and restrict the tort of trespass to tangible invasions. "[R]ecognizing a trespass claim based on dust and intangible intrusions," it warns, "would inappropriately blur the line between trespass and nuisance."[13] The Darneys prefer the modern theory. They encourage the Court to abandon "an outdated interpretation of trespass law" that contradicts "decades of scientific advancement and legal development," and to recognize that intangible dust and

---

[11] See, e.g., Pub. Serv. Co. of Colorado v. Van Wyk, 27 P.3d 377, 390 (Colo. 2001); Mercer v. Rockwell Int'l Corp., 24 F. Supp. 2d 735, 743 (W.D. Ky. 1998); Maddy v. Vulcan Materials Co., 737 F. Supp. 1528, 1540 (D. Kan. 1990); Bradley v. Am. Smelting and Refining Co., 709 P.2d 782, 790-91 (Wash. 1985); Borland v. Sanders Lead Co., Inc., 369 So.2d 523, 529 (Ala. 1979); Martin v. Reynolds Metals Co., 342 P.2d 790, 793-94 (Or. 1959).

[12] See, e.g., Adams v. Cleveland Cliffs Iron Co., 602 N.W.2d 215, 222 (Mich. Ct. App. 1999); Prosser and Keeton § 13, at 71-72.

[13] (Def.'s Mot. for Summ. J. (Docket # 62) at 14 n.4.)

vibrations may unlawfully invade a plaintiff's interest in the exclusive possession of her property.[14]

Despite this rather fundamental opposition, both parties agree that the Supreme Judicial Court of Maine ("SJC") has not answered the question at hand. Typically, the Court's duty in such circumstances is to "make an informed prophecy—to discern the rule the state's highest court would be most likely to follow," Janney Montgomery Scott LLC v. Tobin, No. 08-1863, 2009 WL 1942039, at *2 (1st Cir. July 8, 2009), even when the Court's independent judgment might differ. See Warren v. United Parcel Service, Inc., 518 F.3d 93, 98 (1st Cir. 2008).

Fortunately, Maine law provides an alternative to the hazards of "informed prophecy": certification. Specifically, a federal court may certify "determinative" questions of state law when "there are no clear controlling precedents in the decision of the [SJC]." 4 M.R.S.A. § 57; see also Me. R. App. P. 25(a); Brown v. Crown Equip. Corp., 501 F.3d 75, 78 (1st Cir. 2007) (suggesting that "determinative" is "probably a short-hand for avoiding advisory opinions"). Moreover, "there [should] be no dispute as to the material facts associated with the potentially determinative question or questions presented by the certification." N. River Ins. Co. v. Snyder, 804 A.2d 399, 401 (Me. 2002). "The decision whether to certify lies within the sound discretion of the federal court." Gough v. E. Maine Dev. Corp., 172 F. Supp. 2d 221, 117 (D. Me. 2001)

Here, three factors militate in favor of certification. First, because the Darneys' trespass claims seek recovery only for dust and vibrations,[15] disposition of these claims

---

[14] (Pls.' Supplemental Opp'n to Def.'s Mot. for Summ. J. (Docket # 85) at 11.)

[15] (See Compl. (Docket # 1-6) ¶¶ 35, 40.)

turns on the unsettled legal questions; in other words, those questions are "determinative." Moreover, neither the precedents of the SJC nor the scholarly works commonly consulted by the SJC control: although all agree that the "gist of [a trespass] action is unlawful entry,"[16] few sources consider the more elaborate question of whether an intangible invasion constitutes such an entry. See Medeika v. Watts, 957 A.2d 980, 981-82 (Me. 2008) (gravelling of neighbor's driveway constituted unlawful entry); Dalphonse v. St. Laurent & Son, Inc., 922 A.2d 1200, 1202 (Me. 2007) (encroachment of bucket loader four to eight feet onto plaintiffs' property constituted unlawful entry).

Finally, and most importantly, the modern theory modifies the traditional doctrine of trespass in significant ways: in addition to permitting actions based on intangible invasions, the modern theory grafts onto the law of trespass a requirement of "substantial damage." Marceau, 959 A.2d at 554; see also Adams v. Cleveland Cliffs Iron Co., 602 N.W.2d 215, 220 (Mich. Ct. App. 1999); but see Mercer v. Rockwell Int'l Corp., 24 F. Supp. 2d 735, 742-43 (W.D. Ky. 1998) (rejecting requirement of "substantial damage" in favor of simple "actual damage"). This enhanced burden of proof contradicts the bedrock principle that trespass is complete upon any "invasion of a plaintiff's property, however slight." Bradley, 709 P.2d at 787; see also Medeika, 957 A.2d at 982 (holding that because "some damage is presumed to flow from a legal injury to a real property right," injured party entitled to nominal damages) (citation and internal punctuation omitted); Prosser and Keeton § 13, at 70 ("Any intentional use of another's real property, without authorization and without a privilege by law to do so, is actionable as a trespass without regard to harm."). Thus, the modern theory works fundamental changes to the doctrine of trespass, which changes extend beyond the principal question here regarding tangible

---

[16] Maine Tort Law § 5.09, at 5-14 (citing Cook v. Curtis, 131 A. 204, 206 (Me. 1925)).

13

versus intangible invasions. These are changes best made by the SJC, if at all. Cf. Bradley, 709 P.2d at 784 (addressing viability of trespass claim for intangible invasions on certification from federal district court).

The Court therefore certifies the following questions to the Maine Supreme Judicial Court sitting as the Law Court:

1. Does Maine law follow the modern theory of trespass in recognizing a cause of action for trespass based on intangible invasions by dust or vibrations?

2. If so, does that cause of action require proof of actual and substantial damages?

The SJC's disposition of the certified questions will ultimately determine the viability of the Darneys' trespass claims.

### IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant's Motion for Partial Summary Judgment (Docket # 62) is hereby GRANTED IN PART and DENIED IN PART.

Moreover, the Court hereby CERTIFIES the questions of state law stated above to the Maine Supreme Judicial Court sitting as the Law Court and respectfully requests the Law Court to provide instructions concerning such questions pursuant to 4 M.R.S.A. § 57 and Rule 25 of the Maine Rules of Appellate Procedure. In accordance with Maine Rule of Appellate Procedure 25(b), the Court respectfully suggests that the Defendant be treated as the appellant before the Maine Supreme Judicial Court sitting as the Law Court.

The Clerk is hereby DIRECTED to cause twelve (12) copies of this Order to be certified, under official seal, to the Maine Supreme Judicial Court sitting as the Law Court. It is FURTHER ORDERED that the Clerk of this Court be, and is hereby, authorized and directed to provide, without any cost, to the Law Court, upon written request of the Chief Justice or the Clerk thereof, copies of any and all filings of the parties herein and of the docket sheets pertaining to this case.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 6th day of August, 2009.