UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| STEPHEN AND KATHY DARNEY, personally, and on behalf of K.D. and S.D., )<br>)<br>)<br>Plaintiffs,   )<br>)<br>v.                                   )<br>)<br>DRAGON PRODUCTS COMPANY, )<br>LLC,                               )<br>)<br>Defendant             ) | No. 08-CV-47-P-S |

**MEMORANDUM OF DECISION ON MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT AND
AMENDED SCHEDULING ORDER**

Plaintiffs seek leave to amend their complaint to include a strict liability claim. On December 17, 2009, the Law Court issued an opinion in Dyer v. Maine Drilling & Blasting, Inc., holding that a claim arising from blasting activity may be analyzed under standards set forth in the Second Restatement of Torts to determine whether the blasting activity in question constitutes an abnormally dangerous activity for which strict liability is imposed, notwithstanding observation of a reasonable standard of care. 2009 ME 126, ¶ 15, 984 A.2d 210, 215 (citing Restatement (Second) of Torts §§ 519, 520 (1977)). Defendant opposes the motion. The Court referred this pretrial, non-dispositive matter for determination pursuant to 28 U.S.C. § 636. There is a preliminary question whether the referred motion raises a "dispositive" issue or not, which impacts the level of scrutiny the Court would exercise in reviewing an objection to this decision. Compare Allendale Mut. Ins. Co. v. Rutherford, 178 F.R.D. 1, 2 (D. Me. 1998) (reviewing denial of motion to amend answer under *de novo* standard) with Williams v.

HealthReach Network, No. 99-CV-30-B-B, 2000 U.S. Dist. Lexis 9695, *2, 2000 WL 760742, *1 (D. Me. Feb. 22, 2000) (reviewing denial of motion to amend for clear error).  My assessment is that a motion to amend is a non-dispositive motion, not unlike a motion to amend a scheduling order.[1]  Based on my review of the matter presented, I conclude that the motion should be granted.  I also amend the Court's Scheduling Order as outlined below.

## BACKGROUND

The Court has already outlined the relevant procedural background, which I reproduce here:

> On November 12, 2004, the Darneys filed a complaint against Dragon in Knox County Superior Court ("Darney I"), in which they asserted claims for common-law trespass, statutory trespass, nuisance, strict liability, negligence, and injunctive relief.  (See Compl. (Docket # 38-3) ¶¶ 21-45.)  The parties proceeded to litigate this suit in state court, conducting extensive discovery, designating expert witnesses, and filing pre-trial motions.  On October 26, 2007, the Knox County Superior Court granted Dragon summary judgment as to the Darney I claims for nuisance, strict liability, and negligence for personal injury.  The court placed what remained of the Darney I suit on its March 2008 trial list soon thereafter.
>
> On January 30, 2008, the Darneys filed this action ("Darney II") in Knox County Superior Court, in which they asserted claims for common-law trespass, statutory trespass, nuisance, negligence, and injunctive relief, and moved to consolidate the two lawsuits.  In response, Dragon removed the Darney II suit to this Court.  The Darneys initially moved to remand the Darney II suit to state court, but ultimately withdrew that motion after the state court signaled its unwillingness to consolidate.  Thus, Darney II remained in this Court, while Darney I proceeded toward trial in state court.
>
> On May 27, 2008, the parties filed in Knox County Superior Court a joint stipulation of dismissal, with prejudice, of Darney I.  On January 6, 2009, this Court determined that neither the parties' dismissal of Darney I nor the state court's partial summary judgment order warranted preclusion of Darney II, and

---

[1] The First Circuit recently determined that a magistrate judge appropriately issued an order rather than a recommended decision with respect to a motion requesting a stay of proceedings and an order compelling arbitration, which tends to reinforce the idea that an order is apt here as well.  Power Share, Inc. v. Syntel, Inc., ___ F.3d ___, No. 09-1625, 2010 U.S. App. LEXIS 4182, 2010 WL 682513 (1st Cir. Mar. 1, 2010).

> thus denied Dragon's Motion for Summary Judgment (Docket # 35). (See Order (Docket # 48).)

(Order on Mot. for Partial Summary J. at 3-4, Docket # 93.)[2]  In its order on the motion for partial summary judgment, the Court granted summary judgment to Defendant to the limited extent of Plaintiffs' negligence claims for personal injuries, concluding that the record was not sufficient to support a non-speculative finding on the issue of causation.  (Id. at 7-9.)

Prior to granting summary judgment on the personal injury claims, the Court had denied another summary judgment motion in which Defendant asserted that Plaintiffs could not maintain the instant action due to the stipulation of dismissal with prejudice that entered in the first action, on the ground of either claim preclusion or issue preclusion.  The Court determined that Plaintiffs were not precluded from pursuing in this action their claims of negligence and nuisance to the extent they rested on facts and events occurring after November 12, 2004 (the filing date of the first action).  (Order on Mot. for Summary J. at 10-11, Docket # 48.)[3]  At that time, Plaintiffs' complaint did not include the strict liability theory previously rejected by the Maine Superior Court.  (Id. at 10 n.8.)

The strict liability theory is the subject of the instant motion for leave to amend. Plaintiffs observe that this action commenced in Superior Court and that they did not assert a claim of strict liability as they had in their first action because the Superior Court had ruled that no such claim existed under Maine law.  Now, in the wake of the Law Court's decision in Dyer, Plaintiffs wish to reintroduce this theory by adding a sixth count to their complaint in which they allege:  "Defendant's blasting operation is an abnormally dangerous activity and, therefore,

---

[2]   Darney v. Dragon Prods. Co., LLC, 640 F. Supp. 2d 117 (D. Me. 2009).

[3]   Darney v. Dragon Prods. Co., LLC, 592 F. Supp. 2d 180 (D. Me. 2009).

Defendant is strictly liable for the damage Plaintiffs and their property have sustained from its blasting operation." (Mot. for Leave to File, Docket # 97; Proposed First Am. Compl., Docket # 97-1.)

All of the deadlines in the Scheduling Order have expired. However, the case has been suspended since August of 2009 on account of the certification of a question of law to the Law Court related to the Maine common law of trespass.

## DISCUSSION

Once a responsive pleading has been filed, leave to amend a complaint should be freely given when justice so requires. Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178 (1962); Sandler v. Calcagni, 243 F.R.D. 24 , 25 (D. Me. 2007). Leave to amend should only be denied where the amendment would be futile in its effect, would cause prejudice to adverse parties, where there has been undue delay in seeking the amendment, or where the amendment is sought in bad faith. Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 71 (1st Cir. 2001); Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994). Motions to amend should otherwise be granted liberally by the Court. Sandler, 243 F.R.D. at 25.

Defendant argues that leave to amend should be denied in this case because the motion comes well after the scheduling order deadlines for amendment of the pleadings and designation of experts, beyond the close of the discovery period, and months after rulings on summary judgment issues. Defendant also argues that the claim should have been asserted previously, despite the Pre-Dyer condition of Maine law. Defendant says the extent of the delay is too great, that there is insufficient evidence to support the amendment, that it would be prejudicial to them to let the new theory go forward, and that the amendment is futile. (Def.'s Opp'n Mem. at 1, Docket # 98.) I address these concerns seriatim.

4

**A.     Delay**

Defendant's position is that the longer the delay the more reasonable it is to deny leave to amend. Otherwise, it complains that the Plaintiffs should have pursued the strict liability theory upon commencement of the case. (Id. at 2.) If this case were set for an impending trial date, I might agree with Defendant that further delay would be too great an inconvenience. However, this case is presently stalled on account of the certification to the Law Court. Amendment of the complaint and consideration of the strict liability theory by the parties' experts will give them something to attend to while the certified question is before the Law Court. It is true that Plaintiffs might have pressed the strict liability claim earlier, despite their lack of success in the Superior Court in the first case against Defendant. However, had they done so, the state of Maine law at the time would no doubt have caused this Court to dismiss the claim summarily. In effect, we would be in the same predicament that presently exists, although the Court would have before it a motion for reconsideration rather than a motion requesting leave to amend. Given the predicament, I am not persuaded that delay is such a substantial consideration that it should override the liberality that otherwise informs the Court's exercise of discretion when it comes to amendment of the pleadings.

Defendant nevertheless insists that leave to amend is the exception rather than the rule once deadlines for amendment set in a scheduling order have expired and the defendant has filed motions for summary judgment. There is authority to this effect. The First Circuit holds that a good cause standard applies in such a scenario and that a plaintiff must also show "substantial and convincing evidence" in support of a post-summary judgment amendment. Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004); Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 109 (1st Cir. 2002).

As for good cause to amend the scheduling order, I am persuaded that the Law Court's very recent decision in Dyer adequately explains the timing of the requested amendment. However, it is the substantial and convincing evidence standard that potentially frustrates Plaintiffs' motion.  In Dyer, the Law Court explained that a claim of strict liability for blasting activity must be analyzed in accordance with a Restatement standard.  That standard calls for consideration of the following factors:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Dyer, 2009 ME 126, 984 A.2d at 215 n.4 (quoting Restatement (Second) of Torts § 520 (1977)). Because the Law Court has held that the foregoing standard is now available, as a matter of law, for claims arising from blasting activity, these factors present issues of fact.  No one factor is necessarily dispositive.[4]

---

[4]  The Restatement includes the following comment:

> *f. "Abnormally dangerous."*  For an activity to be abnormally dangerous, not only must it create a danger of physical harm to others but the danger must be an abnormal one.  In general, abnormal dangers arise from activities that are in themselves unusual, or from unusual risks created by more usual activities under particular circumstances.  In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance.  Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability.  On the other hand, it is not necessary that each of them be present, especially if others weigh heavily.  Because of the interplay of these various factors, it is not possible to reduce abnormally dangerous activities to any definition.  The essential question is whether the risk created is so unusual, either because of its magnitude or

As for evidence supporting the addition of a strict liability claim, the Court observed in its most recent summary judgment order that "the Darneys offer evidence of appreciable damage to their chimney, ceiling, roof, wall, floors, windows, barn, and yard, as well as their repeated attempts to repair that damage [and that they have evidence] that the cost of repair approaches $80,000." (Order on Mot. for Partial Summary J. at 5-6.) The Court also found that "a genuine issue of material fact exists as to whether Dragon acted with 'substantial certainty' that its conduct would result in presence on the Darneys' property." (Id. at 10.) The summary judgment papers associated with the first motion support other material findings, such as findings related to the extent or severity of Defendant's blasting activity. For example, Defendant itself attached interrogatory answers from Stephen Darney to its initial motion for summary judgment. Among the interrogatory answers are sworn statements to the effect that:

> Dragon's blasting operation has continued to advance toward my home, and the homes of others and businesses on our street and nearby. I and my family have felt huge blast explosions and vibrations that have shaken my home, and caused bricks to dislodge and fall down the chimney, cracks to widen, foundations to crack open, and my barn to shift. I have repeatedly tried to repair the damage, but, with successive new blasts, there is further shifting of the structures and further damage to the chimney, roof, walls and foundation. The noise from the blasts scares my children. The noise, vibrations and dust from the blasting operation plague our existence. . . . .
>
> Over time, I have noticed that the home has shifted; it has been disrupted. I have observed windowsills that I did not paint have the paint suddenly crack. There are pictures taken in front of walls in the house with no cracks, then later pictures with cracks in the same spot. I have noticed where the deck railing meets the barn, the siding on the barn has buckled. The siding is also buckling. The molding on the north wall on the interior of the house has separated at the top.

---

because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care. In other words, are its dangers and inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence.

Restatement (Second) of Torts § 520 cmt. f.

7

> The exterior wall appears to be buckling. The concrete step to the front door had no space; now there's a 3/8 of an inch gap. The strong ties I installed in the barn have nails backing out of the wood from movement of the structure. I also have noticed that the repointing of the chimney that I did has the mortar falling out. And two barn windows have cracked with no explanation. The drop offs of the landscaping in the yard have become more pronounced. There are cracks forming in my son's bedroom in the ceiling that are growing in length. There is also one at the top of the stairs in the stairwell where there's a beam that runs up. It's a supporting beam. And there is a growing crack in the drywall. Leaks are occurring that did not occur when we were first moved here, and the blasting was further away.

(Ex. R to Decl. of Eric J. Wycoff, Pl. Stephen Darney's Ans. to Pl.'s First Set of Interrogs., Docket # 38-13 at 10-13.) In Dyer, the Law Court concluded that similar facts would suffice to raise a genuine issue of proximate causation, Dyer, 2009 ME 126, ¶ 33, 984 A.2d at 219-20, but the Court remanded "for a determination whether the activity in [the] case subjected Maine Drilling to liability under the Second Restatement approach", id. at 219, ¶ 31.

Under the circumstances of this case, the First Circuit might defer to an exercise of discretion that denies Plaintiffs leave to amend. Id. However, it seems fundamentally just that Plaintiffs should have recourse to a strict liability theory recently adopted by the Law Court that had been expressly rejected by the Law Court's preexisting precedent. On balance, it appears that Plaintiffs have access to substantial evidence that could convince a finder of fact that Defendant's blasting activity amounts to an abnormally dangerous activity. Plaintiffs have been pursuing recourse for more than five years. A few more months to sort out the strict liability theory does not seem unreasonable, especially when the case is otherwise on hold.

**B.     Prejudice**

Defendant emphasizes here that prejudice arises from the need to reopen discovery with additional costs, postponement of trial, and a need to alter trial tactics and strategy, paraphrasing the factors highlighted by the First Circuit in Steir.  Defendant observes that it is "entitled to discover the basis for the Darneys' allegation that its blasting is an 'abnormally dangerous activity' and to discover what the Darneys' alleged personal injuries and property damage are as a result of its blasting."  (Def.'s Opp'n Mem. at 4.)  It also asserts that it is "entitled to designate experts to assist this Court in assessing the six-factor test for whether an activity is 'abnormally dangerous activity,' and to assist in determining whether the Darneys' alleged personal injuries and property damage were caused by Dragon's blasting." (Id. at 4-5.)  This is fitting.  A schedule can be set to accommodate these needs and these issues can be pursued while the Court awaits an answer from the Law Court on certified questions associated with the common law of trespass.

**C.     Futility**

Defendant argues that a strict liability claim is barred by claim preclusion (*res judicata*). (Id. at 5.)  Defendant also argues that the claim is futile to the extent of any personal injury claims.  As for claim preclusion, everything the Court said about why claim preclusion did not apply with respect to nuisance and negligence in its first summary judgment order resounds with equal significance here, including the limitation of any such claim to events occurring after November 12, 2004.  The inapplicability of claim preclusion is even more apparent here because the dismissal of the strict liability claim by the Superior Court during the first action was a legal determination rather than a factual determination and the basis for that legal determination has now been overturned by Dyer.

9

Defendant's argument concerning personal injury claims is persuasive, however. Indeed, Plaintiffs have not even attempted to rebut it in their reply memorandum. The Court previously addressed the quality of Plaintiffs' evidence of causation related to their personal injury negligence claims and concluded that the evidence was speculative and could not support a reliable finding of causation. Proof of causation remains an essential element of a strict liability claim. Dyer, 2009 ME 126, ¶ 32, 984 A.2d 219. Consequently, the Court's prior summary judgment ruling that Plaintiffs' evidence of causation is speculative in relation to personal injury claims applies with equal force to the strict liability theory.[5]

### D. Amended Scheduling Order

On March 5, 2010, I held a telephone conference to address what kind of discovery Defendant would wish to pursue if the motion for leave to amend were granted. Although Defendant voiced objection to the motion for leave to amend given the need to consider the six factors of the Restatement test at this late juncture in the case, Defendant did not object to my suggestion that new discovery initiatives be limited to contention interrogatories propounded by Defendant upon Plaintiffs to determine the factual basis that Plaintiffs rely upon in relation to each of the Restatement's six factors. Contemporaneously, Plaintiffs will produce a supplemental expert disclosure, relying on their existing experts, to address the strict liability factors. After receiving the Plaintiffs' answers to interrogatories and supplemental disclosure, Defendant will have an opportunity to refer the same to its expert witnesses, to consider whether a need exists to retain an additional expert on the strict liability issue, and to designate the expert

---

[5] Counsel for Plaintiffs conceded during the conference that the motion to amend to include a strict liability count is not meant to reintroduce any personal injury claim for purposes of trial.

testimony it intends to rely on regarding the issue. If Defendants should designate a new expert witness, the Plaintiffs will have an opportunity to further designate a rebuttal expert, if necessary.

Defendant questioned whether it would be afforded an opportunity to present a dispositive motion on the strict liability question. I expressed my doubt that another dispositive motion would be productive at this stage, particularly given that other claims are already headed for trial, and the Court likely could more efficiently address the strict liability legal standard in its findings subsequent to the bench trial. However, I indicated to defense counsel that he could seek leave to file such a motion if he felt that he had a particularly persuasive justification for doing so.

The scheduling order is amended as follows:

Deadline for filing of amended complaint: March 12, 2010.

Deadline for Defendant to propound contention interrogatories limited to the strict liability factors: March 12, 2010.

Deadline for Plaintiffs to answer Defendant's strict liability interrogatories and to supplement their existing expert designation(s): April 2, 2010.

Deadline for Defendant to make expert designations regarding the strict liability factors: May 3, 2010.

Deadline for Plaintiff to designate expert rebuttal testimony: May 21, 2010. The final discovery deadline is June 1, 2010, and the matter will then be placed on an appropriate trial list.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for leave to amend is GRANTED. The Scheduling Order is amended as stated above.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Fed.R.Civ.P. 72.

*So Ordered.*

March 8, 2010                             /s/ Margaret J. Kravchuk
                                          U.S. Magistrate Judge